IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Criminal Action Number |
| | ) | 14-00126-01-CR-W-DGK |
| Mark A. Maxwell, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Pending before the Court is the MOTION TO SUPPRESS EVIDENCE WITH SUGGESTIONS (Doc. #20) filed on June 10, 2014, by defendant Mark A. Maxwell ("Maxwell"). On September 10, 2014, the undersigned held an evidentiary hearing on Maxwell's motion. Maxwell was present and represented by his counsel, Federal Public Defender Ronna Holloman-Hughes. The government was represented by Assistant United States Attorney Bruce E. Clark. At the evidentiary hearing, testimony was given by one witness: Officer Jason Rains with the Kansas City, Missouri Police Department. Additionally, the following exhibit was admitted into evidence: Gov't Ex. #1 [Dashcam videotape]. On the basis of all the evidence adduced at the evidentiary hearing, the undersigned submits the following:

## PROPOSED FINDINGS OF FACT

1. On April 23, 2014, Jason Rains was patrolling as a police officer with the Kansas City, Missouri Police Department. Tr. at 3.

2. At approximately, 1:20 p.m., Officer Rains was patrolling in the vicinity of 63rd Street and Manchester Avenue in Kansas City, when he observed a truck parked on the shoulder of the road. Tr. at 5.

3. As Officer Rains passed the truck in his vehicle he saw a male slumped over in the driver's seat of the truck who appeared to be either sleeping or passed out. Tr. at 5, 16.

1

4. Officer Rains decided to turn back and stop and see if the individual in the truck was okay. Tr. at 6, 14, 16, 25.

5. Prior to approaching the vehicle, Officer Rains radioed in the truck's Missouri license plate number and was informed that the Department of Revenue had "no record" of the vehicle plate number (*i.e.* the vehicle was unregistered). Tr. at 7, 26-27.

6. The officer approached the truck and applied a sternum rub to the driver. Tr. at 9.

7. A sternum rub is used to wake individuals and involves going up and down a person's sternum with your knuckles. Tr. at 9.

8. After a few sternum rubs, the driver came to or woke up and became combative and started swinging at Officer Rains' hands. Tr. at 9-11, 16.

9. The driver was then removed from the truck using an arm bar to prevent him continuing to swing at Officer Rains. Tr. at 10-11, 16.

10. The driver was then frisked for weapons. Tr. at 11.

11. Officer Rains then removed the driver's wallet to obtain identification. Tr. at 12.

12. The driver was identified as Maxwell. Tr. at 10.

13. In removing the wallet, Officer Rains also found a small bag containing what he believed to be methamphetamine residue. Tr. at 12, 19.

14. Officer Rains then called in Maxwell's identification to ensure that he had a valid driver's license and the dispatch reported that he had an outstanding "stop" warrant[1] for aggravated stealing out of Grain Valley, Missouri. Tr. at 13, 15.

15. Officer Rains then called the Grain Valley Police Department to confirm that the warrant was still outstanding and to determine if Grain Valley would extradite Maxwell. Tr. at 13.

16. Grain Valley stated it would extradite Maxwell. Tr. at 13.

17. At that point, Officer Rains placed Maxwell under arrest. Tr. at 13-14.

18. Thereafter, a tow was ordered for the truck. Tr. at 14.

19. Prior to the towing of the truck, Officer Rains performed an inventory search of the truck and found a loaded weapon. Tr. at 14.

---

[1] A stop warrant generally means that a law enforcement agency would like a named individual detained so they can talk with the individual regarding a criminal investigation.

2

## PROPOSED CONCLUSIONS OF LAW

In his motion to suppress, Maxwell raises a single issue, namely that evidence in this case must be suppressed because law enforcement officers conducted an unconstitutional stop of his vehicle and, during the course of the stop, an unconstitutional seizure of his person. Certainly, the Fourth Amendment provides that "the right of the people to be secure in their persons, houses,[2] papers, and effects, against unreasonable searches and seizures, shall not be violated. . . ." U.S. CONST. amend. IV. As made clear in the Fourth Amendment, however, the constitution does not forbid all searches and seizures, but only <u>unreasonable</u> searches and seizures. *Elkins v. United States*, 364 U.S. 206, 222, 80 S.Ct. 1437, 1446 (1960). Nonetheless, as the United States Supreme Court pointedly noted over one hundred years ago:

> No right is held more sacred, or is more carefully guarded, by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law.

*Union Pacific Railroad Co. v. Botsford*, 141 U.S. 250, 251, 11 S.Ct. 1000, 1001 (1891).

---

[2] The stop of an individual in an automobile raises many of the same concerns as a search of an individual's home.

> Automobile travel is a basic, pervasive, and often necessary mode of transportation to and from one's home, workplace, and leisure activities. . . . Were the individual subject to unfettered governmental intrusion every time he entered an automobile, the security guaranteed by the Fourth Amendment would be seriously circumscribed. [P]eople are not shorn of all Fourth Amendment protection when they step from their homes onto the public sidewalks. Nor are they shorn of those interests when they step from the sidewalks into their automobiles.

*Delaware v. Prouse*, 440 U.S. 648, 662-63, 99 S.Ct. 1391, 1400-01 (1979).

In many search and seizure scenarios, the question of legal authority (as well as reasonableness) is presumptively satisfied by a judicially-issued warrant. In this case, of course, the law enforcement officer did not have a warrant to search Maxwell's vehicle. However, over the years, many exceptions to the warrant requirement have been recognized. Nonetheless, the Supreme Court has cautioned that "searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment – subject only to a few specifically established and well-delineated exceptions." *Arizona v. Gant*, 556 U.S. 332, 338, 129 S.Ct. 1710, 1716 (2009) (*quoting Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514 (1967)).

Without question, a traffic stop constitutes a seizure under the Fourth Amendment. *United States v. Peralez,* 526 F.3d 1115, 1119 (8th Cir. 2008). To that end, most warrantless traffic stops are justified under the Fourth Amendment based on probable cause and "the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Whren v. United States,* 517 U.S. 806, 810, 116 S.Ct. 1769, 1772 (1996). In such cases, "[a]ny traffic violation, however minor, provides probable cause for a traffic stop." *United States v. Bloomfield,* 40 F.3d 910, 915 (8th Cir.1994) (*en banc*). In this case, though, the government does not assert that an observed traffic violation supports the stop of Maxwell's truck. However, a constitutionally valid warrantless traffic stop may be supported by "reasonable suspicion." *United States v. Houston,* 548 F.3d 1151, 1153 (8th Cir. 2008). Reasonable suspicion, a less demanding standard than probable cause, denotes at least a minimal level objective justification for a stop. *United States v. Sokolow*, 490 U.S. 1, 7 (1989).

In *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868 (1968), the Supreme Court held that a law enforcement officer can stop and briefly detain a person for investigatory purposes, even without a warrant, if the officer has a reasonable suspicion – supported by articulable facts – that criminal activity "may be afoot," even if the officer lacks probable cause for an arrest. *Id*. at 30, 88 S.Ct. at 1884-85. However, the officer conducting such an investigatory stop must be able to articulate something more than an "inchoate and unparticularized suspicion or 'hunch.'" *Id*. at 27, 88 S.Ct. at 1883. Moreover, the mere fact that an officer's suspicion or hunch, in fact, was well-founded is not dispositive for a constitutional analysis; rather, the Fourth Amendment requires "some level of objective justification for making the stop." *INS v. Delgado*, 466 U.S. 210, 217, 104 S.Ct. 1758, 1763 (1984).

The concept of "reasonable suspicion" is not "readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232, 103 S.Ct. 2317, 2329 (1983). In large part, common sense dictates the analysis of reasonable suspicion.

> The process does not deal with hard certainties, but with probabilities. Long before the law of probabilities was articulated as such, practical people formulated certain common-sense conclusions about human behaviors; jurors as fact-finders are permitted to do the same and so are law enforcement officers.

*United States v. Cortez*, 449 U.S. 411, 418, 101 S.Ct. 690, 695 (1981). Inherent in the concept of reasonable suspicion is the fact that officers may be mistaken in their beliefs. The keystone in such cases hinges on reasonableness. Under the law, "a reasonable but mistaken belief may justify an investigative stop." *United States v. Bailey,* 417 F.3d 873, 877 (8th Cir. 2005). *See also United States v. Garcia-Acuna,* 175 F.3d 1143, 1147 (9th Cir. 1999)( "A mistaken premise can furnish grounds for a *Terry* stop, if the officers do not know that it is mistaken and are reasonable in acting upon it.").

In this case, based on the totality of the circumstances, the Court finds that Officer Rains had the requisite reasonable suspicion in determining to initially conduct a stop of Maxwell's truck. The fact that Officer Rains observed a vehicle parked on the side of the road with its driver slumped over the wheel provides "the reasonable suspicion to detain [the driver] to determine if he had been driving while intoxicated." *United States v. Neeman*, 61 F.Supp.2d 944 (D. Neb. 1999) (officer approached stopped vehicle and noted that the driver was "asleep or unconscious at the wheel").[3] *See also United States v. Broadie*, 452 F.3d 875, 879 (D.C. Cir. 2006) ("officers could reasonably have detained [the defendant] based upon the reasonable suspicion that he had been or soon would be driving while intoxicated" after the defendant "was found slumped over his steering wheel").

Inasmuch as Officers Rains was entitled to conduct an initial stop of Maxwell's vehicle, Officer Rains thereafter could "request the driver's license and registration, request that the driver step out of the vehicle, request that the driver wait in the patrol car, conduct computer inquiries to determine the validity of the license and registration, conduct computer searches to investigate the driver's criminal history and to determine if the driver has outstanding warrants, and make inquiries as to the motorist's destination and purpose." *United States v. Jones*, 269 F.3d 919, 924 (8th Cir. 2001).

---

[3] The initial approach to the vehicle is also likely justified by Officer Rains "as part of his 'community caretaking' function." *United States v. Koger*, 152 Fed. Appx. 429, 430 (6th Cir. 2005) (officer "validly approached" a parked vehicle where the driver "appeared to be asleep or unconscious"). The Supreme Court has deemed these responsibilities "community caretaking functions" and has observed that they are "totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." *Cady v. Dombrowski,* 413 U.S. 433, 441 (1973). Like an investigative detention, such a community caretaking detention must be based upon "'specific and articulable facts which . . . reasonably warrant [an] intrusion' into the individual's liberty." *United States v. Garner*, 416 F.3d 1208, 1213 (10th Cir. 2005). Moreover, the government's interest must outweigh the individual's interest in being free from arbitrary governmental interference. *Id.*

Maxwell argues that even if the initial traffic stop was reasonable, the stop became unconstitutional after Officer Rains determined that Maxwell was not in need of help.  It is true that "[a] constitutionally permissible traffic stop can become unlawful, however, 'if it is prolonged beyond the time reasonably required to complete' its purpose."  *United States v. Suitt*, 569 F.3d 867, 870 (8th Cir. 2009) *(quoting*, i*n part*, United States v. Peralez, 526 F.3d 1115, 1119 (8th Cir. 2008).  In this case, the Court does not find that Officers Rains improperly prolonged the stop by asking routine questions and running Maxwell's driver's license through his dispatch even after he determined that Maxwell was not in need of help.  Moreover, and in any event, by the time that Officer Rains approached Maxwell's truck he had information that the truck was not registered with the Missouri Department of Revenue (despite having a Missouri license plate).  This justified the expansion of Officer Rains' traffic stop beyond a mere determination of Maxwell's sobriety.  *Compare United States v. Hanlon*, 401 F.3d 926, 928-29 (8th Cir. 2005) (when "surrounding objective circumstances give rise to a reasonable suspicion that "criminal activity may be afoot, [an] officer may expand the scope of his investigation").  Under the totality of the circumstances, the Court finds no constitutional infirmity in Officer Rains' traffic stop of Maxwell.

In accordance with the foregoing discussion, it is **RECOMMENDED** that the Court, after making an independent review of the record and applicable law, enter an order **DENYING** the MOTION TO SUPPRESS EVIDENCE WITH SUGGESTIONS (Doc. #20) filed on June 10, 2014, by defendant Mark A. Maxwell.

Counsel are reminded that each has 14 days from the date of receipt of a copy of this report and recommendation to file and serve specific objections to the same.  A failure to file and serve timely objections shall bar attack on appeal of the factual findings in this report which are

accepted or adopted by the district judge except upon the ground of plain error or manifest injustice.

*/s/ John T. Maughmer*
**John T. Maughmer**
**United States Magistrate Judge**